UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| B.R. BROOKFIELD COMMONS NO. 1, LLC, and B.R. BROOKFIELD COMMONS NO. 2, LLC,<br><br>　　　　　　　Appellant,<br><br>v.<br><br>VALSTONE ASSET MANAGEMENT LLC, in its capacity as Attorney-in-Fact for TS7-E Grantor Trust,<br><br>　　　　　　　Appellee. | Case No. 13-CV-310-JPS<br><br><br><br><br>ORDER |

On March 18, 2013, the appellants, B.R. Brookfield Commons No. 1, LLC, and B.R. Brookfield Commons No. 2, LLC (collectively, "B.R."), appealed a series of decisions of the United States Bankruptcy Court for the Eastern District of Wisconsin dismissing B.R.'s objection to a claim of the appellee, Valstone Asset Management, LLC ("Valstone"). On appeal, B.R. asserts that the bankruptcy judges—this matter was initially decided by Judge James Shapiro, and confirmed on a motion for reconsideration by Judge Pamela Pepper—erred in overruling that objection by misinterpreting the bankruptcy code. The Court disagrees, and affirms the decisions of the bankruptcy judges.

1.　BACKGROUND

The facts before the bankruptcy court in the proceeding below are not in dispute.

B.R. filed for Chapter 11 bankruptcy on June 10, 2011.[1] It owns and operates a shopping center in Brookfield, Wisconsin.

Valstone holds the first mortgage on that shopping center, and filed a claim based thereon in the bankruptcy court for an amount exceeding $9,300,000.00.

A third party, Integrity Development ("Integrity"), entered into a second mortgage with B.R. for the principal sum of $2,500,000.00. That is, B.R. borrowed $2,500,000.00 from Integrity and executed a promissory note in favor of Integrity, agreeing to repay that principal. The shopping center serves as collateral to secure that second mortgage. The parties' promissory agreement for this loan states that the debt is non-recourse; however, as Valstone points out, there are a number of circumstances in which the debt becomes a recourse debt.

After filing for bankruptcy, B.R. listed Integrity's claim on Schedule D. The shopping center's appraised value at that time was less than the entirety of Valstone's $9,300,000.00 claim.[2] As such, Integrity's $2,500,000.00 claim is effectively unsecured, as it is not supported by any equity that is not

---

[1] It should be noted that the current bankruptcy proceeding is not B.R.'s first. Rather, after Judge Shapiro dismissed B.R.'s initial Chapter 11 petition as having been brought in bad faith, B.R. re-filed for Chapter 11 bankruptcy one day later. That matter was assigned to Judge Shapiro, who handled the proceedings through the dismissal of B.R.'s objection to Valstone's claim. Judge Pepper heard a motion for reconsideration of that decision, having taken over the case after Judge Shapiro's retirement. After Judge Pepper denied the motion for reconsideration, B.R. filed the immediate appeal.

[2] There is some dispute as to the actual value of the shopping center, but that dispute is immaterial for purposes of the appeal at hand.

already securing Valstone's claim. Nonetheless, Integrity assigned its claim to Valstone, and Valstone continued to assert the claim against B.R.[3]

B.R., however, filed an objection to Integrity's claim, arguing that it should be disallowed as an unsecured claim, pursuant to 11 U.S.C. §§ 502(b)(1) and 1111(b), on the basis of its being unsecured by equity in the shopping center.

Judge Shapiro disagreed with B.R.'s contention and overruled its objection. He then retired, resulting in B.R.'s bankruptcy case being reassigned to Judge Pepper for further proceedings. Only after the matter was reassigned did B.R. request reconsideration of Judge Shapiro's decision.

On reconsideration, Judge Pepper confirmed Judge Shapiro's previous ruling, agreeing that B.R.'s objection to the Integrity claim should be overruled and the Integrity claim allowed.

B.R. appealed these rulings, and the matter is now before the Court, having been fully briefed by the parties and ripe for decision.

2. Standard of Review

On appeal, a district court may affirm, modify, reverse, or remand a bankruptcy court's judgment, order, or decree. Fed. R. Bankr.P. 8013. Factual findings are reviewed under a clearly erroneous standard, and conclusions of law are reviewed de novo. *See, e.g.*, Fed. R. Bankr. P. 8013; *In re Newman*, 903 F.2d 1150, 1152 (7th Cir.1990).

---

[3] For clarity, despite the $2,500,000.00 claim having been reassigned to Valstone, the Court will continue to refer to it as the "Integrity claim." As already mentioned, Valstone asserted a separate and independent $9,300,000.00 claim against B.R. Thus, to ensure that those two claims are not confused, the Court will continue to refer to the smaller of the two claims, originally held by Integrity, as the "Integrity claim."

3. Analysis

Generally speaking, 11 U.S.C. § 502(b)(1) ("§ 502(b)(1)") disallows deficiency claims on non-recourse debts. The entirety of the Integrity claim is a deficiency claim. Thus, the Integrity claim should be disallowed unless the Court determines that it is either based upon a recourse debt or entitled to some exception to § 502(b)(1)'s provisions.

Valstone spends a small portion of the brief arguing that the Integrity claim is, in fact, based upon a recourse debt, and thus should entirely escape disallowance. (Valstone Resp. at 3). Valstone bases that argument on the fact that the Integrity loan contained a number of "carve-outs" or exceptional cases in which the note was converted from non-recourse to recourse. (Valstone Resp. at 3). Neither the bankruptcy judges nor the parties have extensively addressed that issue, and the Court does not wish to address that contention on the limited record before it.

Instead, the entirety of the briefing in this matter has focused upon an exception to § 502(b)(1), which could apply to remove the Integrity claim from the ambit of § 502(b)(1)'s disallowance: 11 U.S.C. § 1111(b)(1)(A) ("§ 1111(b)(1)(A)"). That provision calls for claims "secured by a lien on property of the estate [to] be allowed or disallowed under § 502…the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse." 11 U.S.C. § 1111(b)(1)(A). The parties and bankruptcy judges below focused much more of their effort on addressing whether that exception should apply to the Integrity claim. Indeed, there is no question amongst the parties that the application of this exception is dispositive. If the Court determines that the exception applies, then the Integrity claim must be allowed; if, on the other

hand, the Court determines that the Integrity claim does not fall under § 1111(b)(1)(A)'s terms, then the Court would be obliged to reverse the bankruptcy judges' decisions and disallow the claims.[4]

Thus, there is only one issue in this appeal: whether the Integrity claim, being totally unsecured by equity in the shopping center, may be treated as a recourse claim under § 1111(b)(1)(A), and accordingly allowed under § 502(b)(1).

This Court is not the first to address this issue. The United States Bankruptcy Court for the Northern District of Georgia previously considered the question in 1988, and determined that totally-unsecured claims, such as the Integrity claim at issue in this case, should be treated as recourse debts under § 1111(b)(1)(A), and therefore allowed under § 502(b)(1). *In re Atlanta West VI*, 91 B.R. 620, 623–24 (Bankr. N.D. Ga. 1988). The Bankruptcy Court for the Southern District of Florida reached an opposite conclusion an 1993, but did so in a much more cursory fashion than did the *Atlanta West* court. *In re SM104 Ltd.*, 160 B.R. 202, 216 (Bankr. S.D. Fl. 1993). The parties also cite to *In re Montgomery Ward, LLC*, in which the Third Circuit held that § 1111(b)(1)(A) does not convert a non-recourse mortgage to a recourse mortgage for non-bankruptcy purposes, but that case does not specifically address the narrower issue of whether that exception should apply to unsecured nonrecourse claims in the bankruptcy setting, which is the more precise

---

[4] In reality, if the Court were to make such a determination, then the Court would delve further into the issue of whether the Integrity loan is truly non-recourse. However, the Court decides that § 1111(b)(1)(A) applies, and therefore may avoid the much thornier issue of determining the recourse or non-recourse status of the underlying Integrity loan.

question that the Court is called upon to answer here. *In re Montgomery Ward, LLC*, 634 F.3d 732 (3d Cir. 2011).

The Court will address those cases in greater detail, below, but notes that it need not address them at all. This is an issue of statutory interpretation and, therefore, the Court should look first to the plain meaning of the statute in question. *See, e.g.*, *Emergency Servs. Billing Corp., Inc. v. Allstate Ins. Co.*, 668 F.3d 459, 465 (7th Cir. 2012) (*Grzan v. Charter Hospital of Northwest Indiana*, 104 F.3d 116, 122 (7th Cir.1997); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). Thus, to the extent that it determines the meaning of § 1111(b)(1)(A) is clear, it need not look to the other authority cited here, given that the authority is merely persuasive, as opposed to mandatory.

The plain meaning of § 1111(b)(1)(A) is clear and unambiguous. Section 1111(b)(1)(A) requires that claims secured by liens on property of the bankrupt estate be treated as recourse claims "whether or not such holder has such recourse." In other words, regardless of whether the holder of a claim has recourse under that claim, the § 502(b)(1) determination of allowance or disallowance should be made *as if* the claim is a recourse claim, so long as that claim is secured by a lien on estate property. The Court sees no room for interpretation in that text. There is one prerequisite: the claim is secured by a lien on property of the estate. If that prerequisite is satisfied, then the claim is treated as a recourse claim for making the § 502(b)(1) allowance or disallowance determination, regardless of whether the claimant actually has recourse on that claim. On this point, the Court must note that the language does not make any distinction between claims that are legally *under*secured and those that are legally *un*secured, as the Integrity claim is

Page 6 of 9

in this case. Nor would such a distinction make any sense. It would be entirely illogical to require that claimants have some recourse to claim an interest; as Valstone points out, this would allow claims that are vastly undersecured, even if they had only $1 of recourse remaining, but would disallow those same claims if they were worth only $1 less, making them entirely unsecured. That vast distinction would make a huge difference to claimants, without any substantive reason to do so. But, even setting that logical argument aside, the Court stands firm in its determination: the plain meaning of § 1111(b)(1)(A) is clear and requires that any lien on property of the bankrupt estate be treated as a recourse claim, regardless of whether the claimant has recourse under it.

This reading of the language is confirmed by both *Atlanta West* and Collier on Bankruptcy. The *Atlanta West* court held that the mere existence of a lien on estate property triggers § 1111(b)(1)'s application, even if there is no separate equity in the property to secure that lien. *Atlanta West*, 91 B.R. at 624. In other words, "[t]he statute does not require that the lien on the property be secured by value." *Id.* Collier further confirms this, citing to *Atlanta West* and several other bankruptcy cases for the proposition that "[i]t is the existence of the lien that calls [§] 1111(b)(1) into play and not the existence of value in the collateral." 7 COLLIER ON BANKRUPTCY § 1111.03 (16th ed. 2012).

Under this interpretation, the Integrity claim should be treated as a recourse claim, making it allowable under § 502(b)(1). Integrity obtained a lien on the shopping center, which is property of the bankrupt estate. On that basis alone, under the Court's interpretation of the plain language of § 1111(b)(1)(A) and the rationale set forth in *Atlanta West* and Collier's, the

Integrity claim must be treated as a recourse claim, regardless of whether Valstone has recourse under it.

Accordingly, the Court determines that both Judge Shapiro's and Judge Pepper's respective opinions on the issue were correct and should be affirmed. The Integrity claim is allowable against B.R., and it was appropriate to dismiss B.R.'s objection to that claim.

The *SM104* and *Montgomery Ward* cases do not change the Court's analysis or the outcome of this matter. The Court agrees with Judge Pepper that the *SM104* court's § 1111(b)(1)(A) analysis is neither as extensive nor as well-reasoned as the *Atlanta West* court's analysis of the same. *See, e.g.*, *SM 104*, 160 B.R. at 216. While the *SM104* decision is extensive, the analysis of § 1111(b)(1)(A) is no more than a paragraph, and fails to address either the statute's plain language or the practical effect that its interpretation (barring unsecured claims) would have upon claimants in other situations. *Id.* Conversely, *Atlanta West*'s analysis on the issue is extremely well-reasoned. It addresses the language of the statute, examines the intent of Congress in enacting § 1111(b), and considers the practical effect of its interpretation. *Atlanta West*, 91 B.R. at 623–24. As such, the Court believes that it should afford the *Atlanta West* decision much greater persuasive weight than the *SM 104* decision.

Additionally, the *Montgomery Ward* case is readily distinguishable, and therefore should not be given any weight here. The *Montgomery Ward* court discussed § 1111(b)(1)(A) in a much different context, analyzing whether the statute actually changed a mortgage from a nonrecourse debt into a recourse debt. *Montgomery Ward*, 634 F.3d at 740–41. The *Montgomery Ward* court determined that § 1111(b)(1)(A) applied only within the bankruptcy process,

allowing nonrecourse debts to be treated as recourse debts therein, but having no effect on the debt itself. *Id.* ("Because we conclude that [§] 1111(b)'s transformation is for distribution purposes only, we conclude that…the mortgage remained nonrecourse.") That holding does not apply here. Nor does any portion of the *Montgomery Ward* decision even begin to broach the question of whether an unsecured claim on property of a bankrupt estate should be treated as a recourse claim under § 1111(b)(1)(A). The case is entirely inapposite, and the Court affords it no weight.

4. Conclusion

Having found that § 1111(b)(1)(A) operates to allow treatment of the Integrity claim as a recourse debt, and that the two adverse cases cited by B.R. should not change that analysis, the Court is obliged to affirm the bankruptcy court's decision below. It was appropriate to dismiss B.R.'s objections to that claim.

Accordingly,

IT IS ORDERED that the bankruptcy court's decision dismissing B.R.'s objections to the Integrity claim be and the same is hereby AFFIRMED; the Integrity claim shall be allowed against B.R.; and

IT IS FURTHER ORDERED that this appeal be and the same is hereby DISMISSED.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 24th day of May, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge